IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| HAROLD E. CLARK, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:13-cv-00928 |
| v. | ) | |
| | ) | |
| GREATER PENNSYLVANIA | ) | |
| CARPENTERS' PENSION FUND and | ) | |
| JAMES R. KLEIN, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S SUMMARY JUDGMENT REPLY BRIEF

Plaintiff Harold E. Clark ("Clark"), through his counsel, submits this brief in reply to the Brief in Opposition ("Fund Brief") filed by Defendants Greater Pennsylvania Carpenters' Pension Fund ("Fund") and James R. Klein ("Klein") (Fund and Klein, collectively, the "Defendants").

The parties agree that the issue is whether Clark, by working for George Junior Republic ("GJR"), is working in an "industry" which is subject to a collective bargaining agreement ("CBA") with the United Brotherhood of Carpenters and Joiners of America ("Union") (if he is, then the Fund's decision to suspend Clark's benefits was reasonable; if not, then the decision was unreasonable). See Plaintiff's Brief in Support of Motion for Summary Judgment ("Plaintiff's Brief") at p. 1; Fund Brief at p.1. There is also no dispute that this Court reviews the Fund's decision to suspend Clark's pension benefits under an arbitrary capricious standard. See Plaintiff's Brief at p. 6; Fund Brief at pp. 5-6. Defendants argue that the term, "industry," actually means job duties, but it is clear that Defendants' proffered interpretation is inconsistent with its plain meaning and otherwise unreasonable, making Defendants' decision to suspend Clark's pension benefits based on that interpretation untenable.

1

**ARGUMENT**

**A. "Industry" Is Not Ambiguous**

To begin, Defendants assert that the term "industry" is "obviously ambiguous," but advance no argument for, or explanation of, their position, offering only that Clark said such a term would "seem clear" and that Clark used "two pages to try to define" the term. Fund Brief at p.5.[1] Of course, those "two pages" (it is really three pages) are Clark's argument that the term "industry" is unambiguous, which is three more pages of analysis than that provided by Defendants on the point.

It is not enough, as Defendants do here, to merely opine that the term is ambiguous. This is especially true, given Clark's argument that: the plain meaning of the term "industry;" an ERISA regulation adopting that plain meeting, see 29 C.F.R. § 2530.203-3(c)(2) (the "Regulation") (which Regulation is explicitly referred to and incorporated by the Fund in its appeal denials and on which Defendants have continued to rely, Fund Brief at p.7); and an agency opinion letter that interprets the Regulation consistent with the plain meaning of "industry," all add up to the conclusion that "industry" is an unambiguous term. Simply put, Clark has offered a compelling basis for finding that the term "industry" is unambiguous and Defendants have not.

In short, "industry" means industry. It does not mean job duties. Accordingly, the Fund's interpretation of the term, i.e., industry equals job duties, is entirely inconsistent with its

---

[1] Clark wrote that it "seem[ed] clear" what "industry" meant because it would, in fact, seem that a reasonable person would have a clear understanding of what the term means. But if Defendants want to suggest that the use of the word "seem" in Clark's brief implies some sort of ambiguity, then it would only be fair to note that other phrases used by Clark imply no such thing, as he discussed the "patent meaning" of the term, the "plain language" of the term, and the fact that Defendants' interpretation of the term is "utterly divorced from [its] plain meaning." Plaintiff's Brief at pp. 7-9.

2

unambiguous meaning. It follows that the Fund's decision to suspend Clark's pension benefits based on that faulty interpretation is arbitrary and capricious.

**B.  Defendants' Interpretation of "Industry" Is Unreasonable**

If "industry" is somehow ambiguous, it is true that Defendants, as they argue, have broad discretion to interpret the terms of the pension plan. But that discretion is not unlimited—any interpretation must still be a reasonable one. DiBartola v. U.S. Steel, 12CV1812, 2013 WL 3305221 at *9 (W.D. Pa. June 28, 2013). Here, Defendants have failed to point to any definition or context in which the term, "industry," is understood to mean job duties, as the Fund construed it in suspending Clark's pension benefits. Instead, the Fund tries to equate job duties with a reference in the Regulation to the "business activities…of any employers maintaining the plan." 29 C.F.R. § 2530.203-3(c)(2). Defendants' argument is devoid of any authority and seems based on nothing more than the strategic use of brackets and virgules. Indeed, the argument that business activities are equivalent to job duties is simply irrational, as the Regulation refers to "business activities of the *employer*," not the employee. Id. (emphasis added). The phrase, "job duties," is not an appropriate descriptive term for an *employer* because an employer is generally an entity and not a person with specific duties, and thus cannot reasonably be substituted as the equivalent of business activities in the context of the Regulation. In sharp contrast, Clark has demonstrated that the plain meaning of "industry," along with the Regulation relied on by the Defendants to suspend his benefits, as well as an administrative interpretation of that Regulation, all plainly provide that industry does not equal job duties.

Perhaps in tacit recognition that they cannot argue around the obvious meaning of the term "industry," Defendants rely on past practice by arguing that they have consistently suspended benefits in cases like this one. Even if the authority cited by Defendants as support for

its consideration of past practice was binding on this Court (which it is not), the district court in Silver Glaziers Local Union #252 Health & Welfare Fund merely stated that using past practice as *a factor* in interpreting a provision may be appropriate. No. 90-2734, 1991 WL 209776 at *4 (E.D. Pa. Oct. 9, 1991). But as the United States Court of Appeals for the Third Circuit explained, "being consistently wrong can hardly be sanctioned as right." Epright v. Envtl. Res. Mgmt., Inc. Health & Welfare Plan, 81 F.3d 335, 339 (3d Cir. 1996), quoting Snyder v. Titus, 513 F.Supp. 926, 934 (E.D.Va.1981). And here, it is abundantly clear that the Fund's decision to suspend Clark's benefits was wrong.[2]

## C.  GJR Is Not In An Industry With A Union CBA

The Fund also argues that, even if it interpreted "industry" arbitrarily and capriciously, Clark is not entitled to summary judgment because GJR is in the same industry as several participating employers who are current signatories to collective bargaining agreements with the Union. It defines GJR's industry as "education," and refers to agreements with the Pittsburgh Board of Public Education and the University of Pittsburgh, among others.

The Fund's argument fails for two reasons. First, the Fund failed to raise this ground for suspension during the administrative process and thus it is not properly before the Court. ERISA regulations require employee benefit plans to provide adequate notice to participants denied benefits by setting forth the specific reasons for the denial in order to allow participants a reasonable opportunity for full and fair review. See 29 U.S.C. § 1133. To preserve these rights, "a reviewing court must focus on the evidence available to the plan administrators at the time of their decision and may not admit new evidence or consider post hoc rationales." Pacconi v. Tr. of

---

[2]  Further to the issue of past practice, it is telling that Defendants dropped their counterclaim, which sought reimbursement from Clark for pension benefits paid to him while he was working for GJR. As Defendants' Exhibit C demonstrates, the Fund has regularly required beneficiaries to pay back pension benefits. *See* Defendants' Exhibit C (Letters to Messrs. Woods, Stahl and Shultz, to name a few). But Defendants' decision to drop the counterclaim against Clark suggests that its past practice cannot withstand judicial scrutiny.

4

the United Mine Workers of Am., 264 F. App'x 216, 217 (3d Cir. 2008) quoting Flinders v. Workforce Stabilization Plan, 491 F.3d 1180, 1190 (10th Cir. 2007). Admitting post hoc rationales would allow participants to "be sandbagged by after-the-fact plan interpretations devised for the purposes of litigation." Id. quoting King v. Hartford Life and Accident Ins. Co., 414 F.3d 994, 999 (8th Cir. 2005). The Fund failed to raise this as a basis for its initial suspension of benefits and thus cannot raise it now, for the first time, before this Court.

Second, the Fund's argument ignores fundamental differences between GJR and participating employers in the Fund. GJR is a residential treatment facility for delinquent and dependent boys that offers education as a component of its treatment program, but it certainly does not compete with the University of Pittsburgh or school districts in the same industry segment. In fact, the education is provided by Grove City Area School District, not GJR. Plaintiff's Ex. H. Taken to its logical outcome, the Fund's argument would mean that K&L Gates LLP, which offers training seminars in-house to its associates, is in the education industry, not the legal industry. Such "modest overlap is far from meaningful," Tapley v. Locals 302 & 612 of Int'l Union of Operating Eng'rs-Emp'r Const. Indus. Ret. Plan, 728 F.3d 1134, 1141 (9th Cir. 2013) (referring to overlap in job duties in interpreting the plan language "job duties" in the context of re-employment restrictions), and should not be used to distract from the fundamental nature of GJR compared to other entities with CBAs with the Union.

There are no genuine issues of material fact between the parties. Defendants' interpretation of the plan language was unreasonable, arbitrary, and capricious. Accordingly, Plaintiff respectfully requests this Court to grant its Motion for Summary Judgment.[3]

---

[3] Defendants did not file a motion for summary judgment by the December 2, 2013 deadline set forth in the Case Management Order. As such, Defendants should be precluded from seeking dismissal of Clark's claims.

Respectfully submitted,

K&L Gates LLP
/s/ Kaitlin C. Dewberry
Michael A. Pavlick
Pa. I.D. No. 60914
Michael.Pavlick@klgates.com
Kaitlin C. Dewberry
Pa. I.D. No. 313616
Kate.Dewberry@klgates.com

K&L Gates Center
210 Sixth Ave.
Pittsburgh, PA 15222
(412) 355-6500 (phone)
(412) 355-6501 (fax)

Dated: January 23, 2014                    Attorneys for Plaintiff