IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HAROLD E. CLARK )<br>    Plaintiff, )<br>)<br>    vs. )<br>)<br>GREATER PENNSYLVANIA CARPENTERS' )<br>PENSION FUND and JAMES R. KLEIN )<br>    Defendants. ) | Civil Action No. 13-928<br><br>Chief Magistrate Judge Lisa P. Lenihan |

# MEMORANDUM OPINION
# ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

## I. Summation

The Motion for Summary Judgment filed by Plaintiff Harold E. Clark ("Retiree") will be granted in substantial part in accordance with the Order to be entered on this date, as the Greater Pennsylvania Carpenters' Pension Fund's (the "Fund") unambiguous language governing Retiree's early retirement benefits cannot be reasonably interpreted to support Defendants' suspension of Retiree's benefits during the employment at issue. Such employment is clearly neither (a) in an "industry" subject to a collective bargaining agreement with the Union nor (b) by an employer with a collective bargaining agreement with the Union. The Court further notes that the case has been focused and well briefed by both parties (given their respectively available factual and legal support). But it has been particularly well briefed by the Plaintiff, including

1

initial analysis and responsiveness to Defendants' Brief in Opposition ("Defendant's Opposition").

The sole question before this Court is whether the Administrator's and/or Board of Trustees' interpretation of the Agreement as grounds for the suspension of Retiree's benefits was reasonable, under the applicable standard of review. As his current employer has no collective bargaining agreement ("CBA") with the Union, this question turns on whether Retiree's current employment constitutes employment "*in an industry* which is subject to a collective bargaining agreement" with the Union. See Agreement (Plaintiff's Support, Appendix Ex. A) (emphasis added). For the reasons inked in Plaintiff's briefs, and set forth below, the Court finds that the language of the Agreement is unambiguous and the interpretation proffered inconsistent with said language. It therefore finds the Defendants' suspension of benefits to have been arbitrary and capricious.

## II. **Factual and Procedural History**

Prior to 2008, Retiree was employed by an employer with a collective bargaining agreement with the United Brotherhood of Carpenters and Joiners of America (the "Union"). Said employer contributed to the Fund, of which Defendant James R. Klein is Administrator. Retiree left that employment in approximately June, 2008, and became eligible for early retirement pension benefits pursuant to the Fund's Agreement and Declaration of Trust (the "Agreement").

In July, 2009 his monthly benefits were suspended pursuant to the Fund's interpretation of the Agreement's early retirement benefit provisions (Article VIII, Section 4), to-wit, that "payment to a retiree prior to age 65 shall be suspended during any period in which the

2

participant returns to active employment in an industry which is subject to a collective bargaining agreement with the [Union] or returns to active service with an employer who has an agreement. That means that if you return to work in any job, union or non-union, in the construction industry anywhere after you begin receiving pension benefits, your benefits must be suspended."

Retiree was then, and remains, employed as Facility Manager by George Junior Republic ("GJR"), a private, non-profit residential treatment facility (including living facilities and educational, therapeutic, and continuing care programs) for delinquent/dependent boys aged 8-18. GJR has no agreement with the Union.[1] Retiree's duty as Facility Manager to "oversee all buildings, food, utilities, automobiles, and grounds" includes supervision of "procurement, maintenance, auto shop and project development", and the hiring/termination of, and ensurance of quality standards by, contractors; overseement of purchasing; and supervision of maintenance and other employees. See Plaintiff's Complaint; Plaintiff's Support at 13; Defendants' Opposition Exhibit A (May 6, 2010 Appeal Response by Defendants) at 2.

The requisite course of appeals timely followed Defendants' suspension of Retiree's benefits, and he has exhausted his administrative remedies. See Plaintiff's Support at 3-4. The Complaint in this Employee Income Retirement Security Act ("ERISA") action, brought under 29 U.S.C. Section 1132(a)(1)(B), was filed July 1, 2013. Defendants filed an Answer and Counterclaim, seeking a preliminary injunction, equitable restitution of $17,961.38, and a constructive trust, for benefits paid while Clark was employed by GJR. Plaintiff moved for summary judgment on December 2, 2013. He requests (a) a declaration of wrongful suspension

---

[1] Cf. Plaintiff's Support at 13 ("[W]hen [GJR] needs construction services, it hires an outside company to perform [them].").

of benefits; (b) an injunction; (c) prejudgment interest at the appropriate rate; (d) reasonable attorney's fees pursuant to 29 U.S.C. Section 1132(g)(1); (e) costs incurred; and (f) dismissal of Defendants' counterclaim (which counterclaim has since been withdrawn).[2]

## III. Applicable Standards

### A. General Summary Judgment Standard

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering summary judgment, a court must draw all reasonable inferences from the underlying facts in the light most favorable to the adversely-affected party. See, *e.g.*, Emerson Radio Corp. v. Orion Sales, Inc.*,* 253 F.3d 159, 162 (3d Cir. 2001). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).

### B. Standard of Review of Administrator's Discretionary Determination

Absent a conflict of interest (as where, for example, a self-funding employer also administers its plan and makes benefit determinations as to which it has competing interests), an Administrator's interpretations of plan language and benefit determinations are generally subject to an "abuse of discretion" or "arbitrary and capricious" standard of review. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Both of these phrases are understood to require a reviewing court to affirm the administrator unless an underlying interpretation or benefit determination was unreasonable, irrational, or contrary to the language of the plan.

---

[2] See Defendants' Opposition at 11, n. 3.

Under the arbitrary and capricious standard of review, a court may overturn a decision of the plan administrator if "it is without reason, unsupported by substantial evidence or erroneous as a matter of law." Miller v. Am. Airlines, Inc., 632 F.3 837, 845 (3d Cir. 2011). The "straightforward, unambiguous language" of an ERISA plan is "given its natural meaning", Saltzman v. Independence Blue Cross, 384 F. App'x 107, 114 (3d Cir. 2010), and "actions taken by the plan administrator inconsistent with the terms of the document are arbitrary." DiBartola v. U.S. Steel, 2013 WL 3305221 at *9 (W.D. Pa. June 28, 2013). The determination of whether a term is ambiguous is a question of law. Mellon Bank, N.A. v. Aetna Business Credit, Inc., 619 F.2d 1001, 1011 (3d Cir. 1980). As Defendants note, an interpretation of the plain language of a plan document need not be the only, or even the best, interpretation, but it must be a reasonable one. See Defendants' Opposition at 6. Under this narrow standard, the reviewing court is not free to substitute its own judgment for that of the plan administrator. Vitale v. Latrobe Area Hosp., 420 F.3d 278, 386 (3d Cir. 2005) (citations omitted).

**IV. Analysis**

As noted above, the plain language of the Agreement provides entitlement to early retirement benefits which shall, however, "be suspended during any period in which the participant returns to active employment in an industry which is subject to a collective bargaining agreement with the [Union] or returns to active service with an employer who has an agreement. That means that if you return to work in any job, union or non-union, in the construction industry anywhere after you begin receiving pension benefits, your benefits must be suspended." See supra; Support Appendix Ex. A. And as noted above, the sole question before the Court is whether such language may be reasonably interpreted as grounds for suspension of

5

Retiree's benefits on the basis of his asserted "return[] to active employment in an industry which is subject to a collective bargaining agreement with the [Union]" where Retiree left employment in the construction industry and began post-retirement employment as a facilities manager at a non-profit residential treatment facility for troubled youth. In short, the Court finds it may not.

The Agreement speaks for itself. It might have provided other terms for the suspension of early-retirement benefits, but it delineated *these* terms for and to its participating employees.[3] The Agreement does not, for example, provide for the suspension of benefits when an employee is employed "in the same industry, the same trade or craft, and the same geographic area covered by the plan, as when the benefits commenced." Compare 29 C.F.R. 2530.203-3(c)(2) (provisions regarding suspension of benefits following regular retirement). Nor does it, for example, provide for the suspension of benefits when an employee returns to employment in job duties or activities, or trade or craft, which include all or any (or some proportion) of work of the nature performed "in an industry which is subject to a collective bargaining agreement with the [Union]". It might have included any of numerous possible variations of a benefit suspension determined with reference to the retiree's individual job duties, but it did not. And scissors and glue are impermissible tools of contract interpretation.

---

[3] Cf. Plaintiff's Support at 11 (citing Dennis v. Bd. Of Trustees of Food Employers Labor Relations Ass'n, 625 F.supp. 976 (M.D. Pa. 1986) (noting that Plan could have imposed more restrictive conditions on early retirement benefits, such as prohibiting them on any reemployment, but chose to articulate other terms)); id. at 16-17(same); Defendants' Opposition at 4 ("[T]he [Fund] is free to provide its own rules regarding suspension of benefits for work performed prior to normal retirement age.") (citing 29 C.F.R. 2530.203-3(a)).

As addressed by Plaintiff, whether an employee is employed in the same "industry" must be determined with respect to the business activities of the employer, not the job duties of the employee. See Plaintiff's Support at 7-9. An industry is an aggregate of manufacturing or other (generally commercial) *enterprises* in a particular field (*e.g.*, the banking industry, the baking industry, the steel industry, the retail industry, the construction industry). Neither an individual employee nor his job duties may reasonably be said to constitute an "industry". Compare Ex. A (Defendants' May 6, 2010 Final Determination Letter) at 2 (concluding that "Claimant's position with GJR is employment in the construction industry . . ." because "[t]he Union presently has active members performing tasks in covered employment similar to those performed by the Claimant" and "[t]he nature of employment with any employer is the standard by which any employer could be subject to a CBA with the Union", *i.e.*, because the employee is thus performing work in the "industry") (emphasis in original)[4] with Plaintiff's Support at 8 ("[T]hat interpretation of "industry" ignores the plain meaning of the word. 'Industry' is not a synonym for job, or job duties.").

The nature of an individual employee's job duties may speak to his continued engagement in a particular "trade or craft"; it simply does not, however, determine whether his employer is "an industry which is subject to" a CBA with a particular union. Cf. Plaintiff's Support at 9-10 (observing, in explication of meaning of the word "industry", regulation 2530.203-3(c)(2)'s three-prong test – employment in the same industry, in the same trade or craft, and in the same geographic area – and noting that if the industry test were applied on the

---

[4] See also Defendants' Opposition at 8 (asserting that "participating employers in the Fund employed carpenters engaged in these same types of business activities/job duties" and "[a]s such [*sic*], the suspension of Plaintiff's pension benefits was proper . . .").

7

basis of the trade or craft performed by individual employees those factors would be rendered redundant) (citing ERISA Opinion No. 84-21A, 1984 WL 23436 (1984)); id. (further explaining, with citation to same Opinion, that "[w]hether a retired employee is working within the same industry is resolved with regard to 'the business activities of the employer, taking into consideration the products and/or services offered by the employer in the course of its business activities and such other facts and circumstances as may be relevant to such determination'"); 29 C.F.R. Section 2530.203-3(c)(2)(i) ("The term 'industry' means the business activities of the types engaged in by any employers maintaining the plan."). See also Plaintiff's Support at 10-11 (noting that Defendants identified, in response to administrative review interrogatory regarding identification of all CBAs between the Union and employers in the same industry as GJR (*e.g.*, youth residential treatment facilities), no such employer but a more than 200 page list of other employers including, principally, construction companies and consulting firms, contractors, construction engineering firms, etc.).

The Court, like Plaintiff, was given slight pause by Defendant's attempt to support its benefit denial by the insertion of the words "job duties", in brackets - as an assertedly appropriate synonym for "business activities" – in its citation to a statutory definition of "industry" as meaning "the business activities [job duties] of the types engaged in by any employers maintaining the plan". Defendants' Opposition at 7 (quoting 29 C.F.R. Section 2530.203-3(c)(2)).[5] Again, business activities are engaged in by enterprises (*i.e.*, businesses; *i.e.,* "employers"), while job duties are undertaken by individual employees. Compare id. ("The Trustees can reasonably interpret *that* language as focusing on the business activities [*job duties*]

---

[5] Cf. Plaintiff's Reply at 3 ("Defendants' argument . . . seems based on . . . the strategic use of brackets . . ."); id. (noting that the regulation refers to "business activities of the *employer*") (emphasis in original).

being performed by the *employee* in his new employment and comparing those to the types of *business activities* engaged in by <u>other employers</u> participating in the plan.") (emphasis added).

And it similarly regarded Defendants' assertion that the Fund properly suspended Retiree's benefits, just as it has suspended the benefits of a number of other retirees on analogous grounds. See Defendants' Opposition at 8-9. As Plaintiff notes, past practice "is of no significance where the plan document is clear", even if its language has been previously interpreted in a consistent, but unreasonable, way. See Plaintiff's Support at 7 (citing <u>Epright v. Envtl. Res. Mgmt., Inc. Health & Welfare Plan</u>, 81 F.3d 335, 339 (3d Cir. 996));[6] Plaintiff's Reply at 4 (quoting <u>Snyder v. Titus</u>, 513 F.Supp. 926, 934 (E.D. Va. 1981)). That the Fund, through the determinations of its Administrator and/or Board of Trustees, may have inappropriately withheld early retirement benefits from other employees is unavailing.[7]

Finally, the Court rejects Defendants' assertion that because one of GJR's business activities is education, and there are "several participating employers in the Fund whose business activity is education" (such as the Pittsburgh Board of Public Education, certain school districts and universities), GJR is "in an industry which is subject to a collective bargaining agreement with the [Union]" and the suspension of Plaintiff's benefits should stand on this ground. Defendants' Opposition at 10. See Plaintiff's Reply at 4-5 (noting that the Fund "failed to raise this ground for suspension during the administrative process and thus it is not properly before the

---

[6] The Court notes that the meaning of a particular word in a plan document may, of course, be clear absent the document's inclusion of a definition. Cf. Defendants' Opposition at 6 (distinguishing <u>Epright</u> as containing a defined term).

[7] Cf. Plaintiff's Support at 14-15 (providing citation to Supreme Court observations regarding the purpose and policies of ERISA including, *e.g.*, that "the centrality of ERISA's object [is] protecting employees' justified expectations of receiving the benefits their employers promise them") (citing <u>Cent. Laborers' Pension Fund v. Heinz</u>, 541 U.S. 739, 743 (2004)).

9

Court"); id. at 5 (noting "fundamental differences" in nature between GJR and participating employers, including school districts). See also ERISA Opinion No. 84-21A, 1984 WL 23436 (1984).[8]

In sum, Defendants' overly broad interpretation of the plain language of the Agreement is patently unreasonable and inconsistent with said language. Accordingly, its suspension of Retiree's benefits was arbitrary and capricious under the applicable standard of review.

### V. Prejudgment Interest and Fees

Plaintiff correctly asserts that, in addition to the amount of benefits wrongfully withheld, and as a result of Defendants' unreasonable, arbitrary and capricious termination of those benefits, he is entitled to prejudgment interest "at the appropriate rate" and reasonable attorneys' fees and costs pursuant to Section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1). Pursuant to Section 1132(g)(1), "the defendant in an ERISA action usually bears the burden of attorney's fees for the prevailing plaintiff . . . thus 'encourag[ing] private enforcement of the statutory substantive rights, whether they be economic or noneconomic, through the judicial process.' " Brytus v. Spang & Co., 203 F.3d 238, 242 (3d Cir. 2000) (quoting Report of the Third Circuit Task Force, Court Awarded Attorney Fees 15 (Oct. 8, 1985), *reprinted at* 108 F.R.D. 237, 250).

In the absence of the parties' analysis or argument as to the appropriate rate of prejudgment interest and the amount of reasonable fees to be awarded, the Court will decline to make such awards at this time but will direct the parties to meet and confer with respect to the

---

[8] The Court notes, but does not hold necessary to its decision, that both the Agreement and Defendants' administrative determinations as to Plaintiff's benefits further refer to the "construction industry".

10

time period and rate of prejudgment interest (*e.g.*, the statutory rate) and Plaintiff's presumptive entitlement to attorney's fees and costs.

## VI. <u>Conclusion</u>

For the reasons set forth above, an Order consistent with this Memorandum Opinion, granting Plaintiff's Motion for Summary Judgment to the extent it requests a declaration of Plaintiff's entitlement to early retirement benefits under the Agreement during the suspension period and for the duration of Retiree's employment with GJR under the same relevant terms and conditions; a directive that said benefits be paid; and a holding that Plaintiff is entitled to prejudgment interest at the appropriate rate, reasonable attorney's fees pursuant to 29 U.S.C. Section 1132(g)(1), and costs incurred . Said Motion will be denied as moot as to its request for an injunction and dismissal of the subsequently withdrawn counterclaim. The parties will be further Ordered to confer with respect to prejudgment interest and attorneys fees and costs, as aforesaid. The parties shall appear before this Court for a status conference to be held within the next thirty (30) days to address the remaining matters.

       __/s/ Lisa Pupo Lenihan_____
       LISA PUPO LENIHAN
       United States Chief Magistrate Judge

Dated: May ___, 2014